UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

_____

MICHAEL LEON POWELL,

          Plaintiff,

v.

MICHIGAN DEPARTMENT OF
CORRECTIONS et al.,

          Defendants.
_____/

Case No. 2:18-cv-221

Honorable Paul L. Maloney

## **OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint against Defendants Thomas Osier, Unknown Isard, Unknown LaLounde, Unknown Chapman, Unknown Dunton, Thomas Mackie, Timothy Ball, Robert Sharp, Brian Majerczyk, Carol Kenison, Unknown Mucha, Jason Thomas, and Larry Weaver, as legally frivolous. The Court will dismiss Plaintiff's complaint against the Michigan Department of Corrections on grounds of immunity and for failure to state a claim. The Court will dismiss Plaintiff's complaint against Melissa Davenport for failure to state a claim.

Finally, the Court will dismiss, for failure to state a claim, Plaintiff's claims against Defendants John Doe #1, John Doe #2, Jane Doe #1, Jane Doe #2, Unknown Mason, Unknown Holden, and Unknown Curtis, EXCEPT: (1) Plaintiff's Eighth Amendment claim for deliberate indifference to serious mental health needs based on the actions of John Doe #1, Jane Doe #1, Jane Doe #2, Unknown Mason, Unknown Curtis, Unknown Holden, and John Doe #2 in response to Plaintiff's suicide attempts as described in ¶¶ 20-25 of the complaint; and (2) Plaintiff's Eighth Amendment claims against Jane Doe #1, Jane Doe #2, Unknown Mason, Unknown Curtis, Unknown Holden, and John Doe #2 for hogtieing Plaintiff as described in ¶¶ 21, 24, and 25 of the complaint.

## **Discussion**

### I.  Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Kinross Correctional Facility (KCF) in Kincheloe, Michigan.  The events about which he complains, however, occurred at the Oaks Correctional Facility (ECF) in Manistee, Michigan, and the Chippewa Correctional Facility (URF) in Kincheloe, Michigan.  Plaintiff bounced back and forth between those facilities during the relevant time period: August of 2016 through April of 2017.

Plaintiff sues the MDOC and **MDOC Mental Health Director Thomas Osier**. Plaintiff sues several employees of the MDOC at URF: **Deputy Warden Unknown Isard; Resident Unit Manager Unknown LaLounde; Assistant Resident Unit Supervisor Unknown Dunton; Psychologist Unknown Chapman**; Mental Health Unit Chief John Doe #1; and Nurses Jane Doe #1 and Jane Doe #2.  Plaintiff sues several employees of the MDOC at ECF: **Warden Thomas Mackie; Deputy Wardens Timothy Ball and Robert Sharp; Mental Health Unit Chief Brian Majerczyk; Psychologist Carol Kenison; Psychologist Case Manager Unknown**

**Mucha; Resident Unit Manager Jason Thomas; Assistant Resident Unit Supervisor Larry Weaver**; Nurses Unknown Mason and Unknown Curtis; Captain Unknown Holden; Third Shift Lieutenant John Doe #2; and Dr. Melissa Davenport.

Plaintiff alleges that during August, 2016, he was placed in administrative segregation following a misconduct conviction. Plaintiff contends that he suffers from serious mental health issues and that the Defendants were deliberately indifferent to his serious mental health needs as they kept him in the unbearable, isolating conditions of administrative segregation. Plaintiff claims that Defendants' actions in subjecting him to atypical and significant hardships in administrative segregation violated his Fourteenth Amendment due process rights. Plaintiff claims that Defendants deliberate indifference to his serious mental health needs violated his Eighth Amendment right to be free of cruel or unusual punishment.

During March of 2017, Plaintiff used a razor to cut into his arm. Defendant John Doe #1, the URF Mental Health Chief, asked Plaintiff why. Plaintiff responded that he was tired of dealing with the pain and that he no longer wanted to live. Despite those statements, John Doe #1 put Plaintiff back in to the segregation cell and provided no treatment.

On March 27, 2017, Plaintiff bit and chewed into a vein in his left arm, trying to kill himself. Defendants Nurses Jane Doe #1 and Jane Doe #2 bandaged Plaintiff's wound. With the assistance of corrections officers the nurses stripped and hogtied Plaintiff and left him in his cell.

Hours later, on March 28, 2017, at 12:30 a.m. he removed the bandage. He was taken to the hospital and the wound was sutured. Later that day he was transferred to ECF.

At 5:30 p.m., Plaintiff chewed through the sutures in his arm. Defendant Nurses Mason and Curtis and Captain Holden bandaged the wound, stripped Plaintiff naked, and hogtied

him. Defendant Third Shift Lieutenant John Doe #2 told Plaintiff that despite the pain of being hogtied, he would not untie Plaintiff. Plaintiff remained hogtied until the early morning hours of March 29, 2017.

Plaintiff alleges that he spent 305 days in segregation before he was released.

In addition to the Eighth Amendment and due process claims referenced above, Plaintiff contends that Defendants discriminated against him because of his mental health disability in violation of Title II of the Americans with Disabilities Act, § 504 of the Rehabilitation Act, and the Equal Protection Clause of the Fourteenth Amendment.

Plaintiff seeks compensatory and punitive damages.

II.    Res Judicata

This is not Plaintiff's first action alleging these facts. In *Powell v. Washington et al.*, 1:17-cv-82 (W.D. Mich.) (*Powell I*), Plaintiff alleged virtually identical facts—and some additional facts regarding the unbearable conditions in administrative segregation—in support of Fourteenth Amendment due process, Eighth Amendment, and First Amendment retaliation claims. Plaintiff's allegations in his first complaint included events through January of 2017.

By opinion and judgment entered February 28, 2017, the Court dismissed Plaintiff's complaint on grounds of immunity and failure to state a claim. *Powell I* (Op. & J., ECF Nos. 5, 6.) Plaintiff appealed that judgment. By order entered December 18, 2017, the Sixth Circuit Court of Appeals affirmed the judgment in all respects, except one. The Court concluded that Plaintiff had stated a claim under the Eighth Amendment because Plaintiff's segregation cell was inadequately lit for a 35-day period during November and December of 2016. *Powell v. Washington et al.*, No. 17-1262 (6th Cir. Dec. 18, 2017) (*Powell I Appeal*). The appellate court

remanded the case to this Court for further proceedings with respect to that Eighth Amendment claim. *Id*. Pretrial proceedings continue in *Powell I*.

Even though *Powell I* continues to proceed forward toward a new final judgment, the judgment initially entered is, in part, final. *See FCA US, LLC v. Spitzer Autoworld Akron, LLC*, 887 F.3d 278, 289-290 (6th Cir. 2018). The portion of the judgment that was affirmed by the Sixth Circuit is final; "only that . . . part of the prior judgment that has been reversed cannot support collateral estoppel." *Id*. at 289.

The doctrine of claim preclusion, sometimes referred to as res judicata, provides that if an action results in a judgment on the merits, that judgment operates as an absolute bar to any subsequent action on the same cause between the same parties or their privies, with respect to every matter that was actually litigated in the first case, as well as every ground of recovery that might have been presented. *Black v. Ryder/P.I.E. Nationwide, Inc.*, 15 F.3d 573, 582 (6th Cir. 1994); *see Kremer v. Chemical Const. Corp.*, 456 U.S. 461, 467 n.6 (1982); *see also Bowen v. Gundy*, No. 96-2327, 1997 WL 778505, at *1 (6th Cir. Dec. 8, 1997). Claim preclusion operates to relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and by preventing inconsistent decisions, encourage reliance on adjudication. *Allen v. McCurry*, 449 U.S. 90, 94 ( 1980). In order to apply the doctrine of claim preclusion, the court must find that (1) the previous lawsuit ended in a final judgment on the merits; (2) the previous lawsuit was between the same parties or their privies; and (3) the previous lawsuit involved the same claim or cause of action as the present case. *Allen*, 449 U.S. at 94; *accord Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981).

With respect to all claims other than the inadequate lighting claim, *Powell I* ended in a final judgment on the merits. Thirteen of the Defendants in this action—the names listed in

bold above—were named in *Powell I*. *Powell I* involved Eighth Amendment and Fourteenth Amendment due process claims premised on Defendants placing Plaintiff in administrative segregation, and keeping him there, while deliberately depriving him of necessary mental health care from August of 2016 through January of 2017. Accordingly, the *Powell I* judgment operates as an absolute bar with respect to every claim litigated in that case, *as well as every ground of recovery that might have been presented*. Therefore, the Court must determine which claims were litigated in *Powell I* and, of the grounds of recovery presented here, which could have been presented in *Powell I*.

Plaintiff presents the same Eighth Amendment and Fourteenth Amendment due process claims in this action that he presented in *Powell I*, at least to the extent those claims relate to the Defendants' actions from August of 2016 through January of 2017. The only actions alleged that fall outside of that timeframe are the actions of John Doe #1, John Doe #2, Jane Doe #1, Jane Doe #2, Mason, Curtis, and Holden in response to the four suicide attempts at the end of March, 2017 and Defendant Davenport's statement in April of 2017 that Plaintiff would be released to general population when a bed was available in Level IV. Claims arising from those incidents are not barred by res judicata. But, those allegations do not relate to any of the thirteen defendants that were named in *Powell I* and this suit. Therefore, at least with respect to the thirteen defendants named in both *Powell I* and this suit, Plaintiff's Eighth Amendment and Fourteenth Amendment due process claims are barred by res judicata.

The res judicata bar also extends to claims that could have been presented. Plaintiff's equal protection, ADA, and RA claims presented here, but not presented in *Powell I*, could have been presented in *Powell I* with respect to Plaintiff's allegations against the thirteen defendants. As set forth fully below, Plaintiff's ADA and RA claims are supported by the same

facts that support his Eighth Amendment claim that Defendants were deliberately indifferent to his serious mental health needs. Therefore, res judicata bars those claims in this suit.

An action that is barred by res judicata is legally frivolous. *See, e.g., Taylor v. Reynolds*, 22 F. App'x 537, 538 (6th Cir. 2001); *Hill v. Elting*, 9 F. App'x 321 (6th Cir. 2001). Therefore, the Court is required to dismiss the barred claims under 28 U.S.C. §§ 1915(e)(2), 1915A and 42 U.S.C. § 1997e(c).

### III.     Immunity

Plaintiff may not maintain a §1983 action against the MDOC. Regardless of the form of relief requested, the states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98-101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1993). For § 1983 claims, Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). In numerous unpublished opinions, the Sixth Circuit has specifically held that the MDOC is absolutely immune from suit under the Eleventh Amendment. *See*, *e.g.*, *Harrison v. Michigan*, 722 F.3d 768, 771 (6th Cir. 2013); *Diaz v. Mich. Dep't of Corr.*, 703 F.3d 956, 962 (6th Cir. 2013); *McCoy v. Michigan*, 369 F. App'x 646, 653-54 (6th Cir. 2010).[1]

Plaintiff has alleged § 1983 claims against each individual defendant in his or her individual *and* official capacity. A suit against an individual in his or her official capacity is

---

[1] In addition, the State of Michigan (acting through the Michigan Department of Corrections) is not a "person" who may be sued under §1983 for money damages. *See Lapides v. Bd. of Regents*, 535 U.S. 613, 617 (2002) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989)); *Harrison*, 722 F.3d at 771.

equivalent to a suit brought against the governmental entity: in this case, the MDOC. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). An official-capacity defendant is absolutely immune from monetary damages. *Will*, 491 U.S. at 71; *Turker v. Ohio Dep't of Rehab. & Corr.*, 157 F.3d 453, 456 (6th Cir. 1998); *Wells v. Brown*, 891 F.2d 591, 592-93 (6th Cir. 1989). Therefore, Plaintiff's § 1983 claims for monetary relief against the individual Defendants in their respective official capacities are properly dismissed on grounds of immunity.[2]

IV.    Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not

---

[2] Plaintiff seeks only monetary relief, he has not requested injunctive or declaratory relief. (Compl., ECF No. 1, PageID.11-12.)

'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

## A.    Due Process

Plaintiff contends that placing him in segregation and then keeping him there for almost ten months is an atypical and significant deprivation that cannot constitutionally occur unless he is afforded due process. Plaintiff is simply wrong.

The elements of a procedural due process claim are: (1) a life, liberty, or property interest requiring protection under the Due Process Clause, and (2) a deprivation of that interest (3) without adequate process. *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006). "Without a protected liberty or property interest, there can be no federal procedural due process claim." *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 519 (6th Cir. 2007) (citing *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 579 (1972)).

The Supreme Court long has held that the Due Process Clause does not protect every change in the conditions of confinement having an impact on a prisoner. *See Meachum v.*

*Fano,* 427 U.S. 215, 225 (1976).  In *Sandin v. Conner,* 515 U.S. 472, 484 (1995), the Court set forth the standard for determining when a prisoner's loss of liberty implicates a federally cognizable liberty interest protected by the Due Process Clause.  According to the *Sandin* Court, a prisoner is entitled to the protections of due process only when a deprivation "will inevitably affect the duration of his sentence" or imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  *Sandin,* 515 U.S. at 486-87; *see also Jones v. Baker,* 155 F.3d 810, 812 (6th Cir. 1998); *Rimmer-Bey v. Brown,* 62 F.3d 789, 790-91 (6th Cir. 1995).

   Confinement in administrative segregation "is the sort of confinement that inmates should reasonably anticipate receiving at some point in their incarceration."  *Hewitt v. Helms*, 459 U.S. 460, 467-73 (1983).  Thus, it is considered atypical and significant only in "extreme circumstances."  *Joseph v. Curtin,* 410 F. App'x 865, 868 (6th Cir. 2010).  Generally, courts will consider the nature and duration of a stay in segregation to determine whether it imposes an "atypical and significant hardship."  *Harden–Bey v. Rutter*, 524 F.3d 789, 794 (6th. Cir. 2008).

   In *Sandin*, the Supreme Court concluded that the segregation at issue in that case (disciplinary segregation for 30 days) did not impose an atypical and significant hardship.  *Sandin,* 515 U.S. at 484.  Similarly, the Sixth Circuit has held that mere placement in administrative segregation, and placement for a relatively short period of time, do not require the protections of due process. *Rimmer-Bey,* 62 F.3d at 790-91; *see Joseph v. Curtin,* 410 F. App'x 865, 868 (6th Cir. 2010) (61 days in segregation is not atypical and significant).  The Sixth Circuit has also held, in specific circumstances, that confinement in segregation for a relatively long period of time does not implicate a liberty interest.  *See, e.g.*, *Baker,* 155 F.3d at 812-23 (two years of segregation while the inmate was investigated for the murder of a prison guard in a riot); *Mackey*

*v. Dyke,* 111 F.3d 460 (6th Cir. 1997) (one year of segregation following convictions for possession of illegal contraband and assault, including a 117-day delay in reclassification due to prison crowding). *But cf. Selby v. Caruso*, 734 F.3d 554, 559 (6th Cir. 2013) (13 years of segregation implicates a liberty interest); *Harden-Bey,* 524 F.3d at 795 (remanding to the district court to consider whether the plaintiff's allegedly "indefinite" period of segregation, *i.e.*, three years without an explanation from prison officials, implicates a liberty interest); *Harris v. Caruso,* 465 F. App'x 481, 484 (6th Cir. 2012) (eight years of segregation implicates a liberty interest). And, specifically in Plaintiff's case, the Sixth Circuit determined that, at least through January of 2017, Plaintiff "received all of the process to which he was entitled." *Powell v. Washington*, 720, F. App'x 222, 227 (6th Cir. 2017).

Plaintiff fails to allege facts showing that any of the remaining Defendants have imposed an atypical and significant hardship on Plaintiff in administrative segregation or that the Defendants have denied him the process to which he was entitled. Accordingly, he fails to state a due process claim against them.

## B. Equal Protection

The Equal Protection Clause prohibits discrimination by government actors which either burdens a fundamental right, targets a suspect class, or intentionally treats one differently than others similarly situated without any rational basis for the difference. *Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 681-82 (6th Cir. 2011); *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 312 (6th Cir. 2005). Plaintiff alleges that Defendants have intentionally treated him differently than others similarly situated without any rational basis for the difference—a "class of one" equal protection claim.

The threshold element of an equal protection claim is disparate treatment. *Scarbrough v. Morgan Cty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006); *Center for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011) ("To state an equal protection claim, a plaintiff must adequately plead that the government treated the plaintiff 'disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis.'"). Plaintiff alleges disparate treatment here, but his allegations are conclusory. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555.

An "equal protection" plaintiff must be similarly situated to his comparators "in all relevant respects . . . ." *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992); *United States v. Green*, 654 F.3d 637, 651 (6th Cir. 2011); *see also Paterek v. Vill. of Armada*, 801 F.3d 630, 650 (6th Cir. 2015) ("'Similarly situated' is a term of art—a comparator . . . must be similar in 'all relevant respects.'"); *Tree of Life Christian Schools v. City of Upper Arlington*, 905 F.3d 357, 368 (6th Cir. 2018) ("A plaintiff brining an equal protection claim must be 'similarly situated' to a comparator in 'all relevant respects.'"). Plaintiff claims that other mentally-ill prisoners in segregation who attempt suicide are transferred to a more therapeutic environment or their mental health files are reviewed to ensure that continued confinement in segregation is safe; but, he does not identify a single such prisoner. *Bertovich v. Vill. of Valley View*, 431 F. App'x 455, 458 (6th Cir. 2011) (Court affirmed dismissal of "class of one" equal protection claims where Plaintiff "[did] not point to any individual who was treated differently . . . ."); *see also Braun v. Ann Arbor Charter Twp.*, 519 F.3d 564, 575 (6th Cir. 2008) ("Although the plaintiffs claim that they have been treated differently from other individuals seeking rezoning, they fail to allege any specific

examples of *similarly situated* individuals . . . ."); *Sanders v. City of Hodgenville*, 323 F. Supp. 3d 904, 911 (W.D. Ky. 2018) ("Sander's class-of-one claim fails as a matter of law . . . Sanders fails to identify any similarly situated individual who was treated differently.").

Plaintiff also fails to allege that those who were treated differently were similarly situated in all relevant respects. *Umani v. Mich. Dep't of Corr.,* 432 F. App'x 453, 460 (6th Cir. 2011) (To be a similarly-situated person, "the comparative [prisoner] 'must have dealt with the same [decisionmaker], have been subject to the same standards, and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or [the defendant's] treatment of them for it.'") (quoting *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998)); *Project Reflect, Inc. v. Metropolitan Nashville Bd. of Public Educ.*, 947 F. Supp. 2d 868, 881 (M.D. Tenn. 2013) (""Plaintiffs . . . fail to plead the existence of a similarly situated comparator . . . [therefore,] the Complaint does not contain sufficient factual matter to state a plausible claim."). Therefore, Plaintiff has failed to state a claim for violation of his equal protection rights.

### C.    ADA and RA

Plaintiff alleges that the MDOC[3] violated his rights under Title II of the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12132 *et seq*., and Section 504 of the Rehabilitation Act of 1973 (RA), 29 U.S.C. 794(a).  Title II of the ADA provides, in pertinent part, that no qualified individual with a disability shall, because of that disability, "be denied the benefits of the

---

[3] Because a suit against an individual in his official capacity is equivalent to a suit brought against the governmental entity, *Will*, 491 U.S. at 71, the reference to the MDOC includes each individual Defendants in his or her official capacity.  Neither the MDOC nor the Defendants in their official capacities are necessarily immune from suit under Title II of the ADA.  *United States v. Georgia*, 546 U.S. 151 (2006).  "[T]he proper defendant under a Title II claim is the public entity or an official acting in his official capacity. . . . Title II of the ADA does not . . . provide for suit against a public official acting in his individual capacity."  *Everson v. Leis*, 556 F.3d 484, 501 n.7 (6th Cir. 2009). Therefore, Plaintiff's claims against the individual Defendants in their respective individual capacities are properly dismissed for failure to state a claim.

services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." *Mingus v. Butler*, 591 F.3d 474, 481-82 (6th Cir. 2010) (citing 42 U.S.C. § 12132).[4] To state a claim under Title II of the ADA, Plaintiff must show: (1) that he is a qualified individual with a disability; (2) that defendants are subject to the ADA; and (3) that he was denied the opportunity to participate in or benefit from defendants' services, programs, or activities, or was otherwise discriminated against by defendants, by reason of plaintiff's disability. *See Tucker v. Tennessee*, 539 F.3d 526, 532-33 (6th Cir. 2008); *see also Jones v. City of Monroe*, 341 F.3d 474, 477 (6th Cir. 2003).

To state his claim Plaintiff must allege that he is disabled, that he is qualified for participation in the mental health programs that Defendants have denied him participation, and that he is being excluded from participation in the mental health programs because of his mental health disability. Plaintiff alleges that he is disabled. He alleges that he is qualified for the mental health programs. He alleges that Defendants have denied him access to those programs. But, no matter how liberally the Court construes Plaintiff's three-paragraph ADA averments, they cannot be stretched to include the necessary allegation that Plaintiff is denied access to the mental health programs *because of his mental health disability*.

Plaintiff's attempt to raise a denial-of-medical-treatment claim as an ADA or RA claim is improper. Failing to attend to the medical needs of disabled prisoners is not an ADA or a

---

[4] Similarly, § 504 of the RA provides in pertinent part:

> No otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service.

29 U.S.C. § 794(a). "Because the ADA sets forth the same remedies, procedures, and rights as the Rehabilitation Act . . . claims brought under both statutes may be analyzed together." *Thompson v. Williamson County*, 219 F.3d 555, 557, n. 3 (6th Cir. 2000) (citing *Maddox v. University of Tenn.*, 62 F.3d 843, 846, n. 2 (6th Cir. 1995)).

RA violation. *Cannon v. Eleby*, No. 98-1546, 1999 WL 507006, at *1 (6th Cir. June 10, 1999).[5]

Plaintiff has failed to state a claim for a violation of the ADA or the RA.

### D. Dr. Davenport

Defendant Davenport is mentioned twice in Plaintiff's factual allegations:

19.     In January of 2017, I informed Dr. Davenport and Mucha that I was having difficulty sleeping, unable to concentrate, having daily suicide ideations, having hallucinations, having anxiety attacks, and difficulty coping in segregation. I requested to be put in a mental health program to assist me with coping with being in long term administrative segregations and to start back taking medication that I was proscribed when I previously had these psychotic sym[p]toms. Dr. Davenport stated, "You should be out of segregations soon and you'll feel better." Dr. Davenport and Mucha did not treat my psychological disorders, failed to provide a treatment plan for me and subjected me to psychological and emotional torture.

\*      \*      \*

26.     Sometime in April of 2017, Dr. Davenport told me: "The only reason that you're still in administrative segregation is because there is no bed-space in level 4. This is a problem state[-]wide and when a bed becomes available you will be released into general population."

(Compl., ECF No. 1, PageID.5-7.) Plaintiff's allegations regarding Dr. Davenport simply echo the allegations that he raised in *Powell I*, even though Plaintiff did not name Dr. Davenport as a defendant in that suit.[6] Defendant Mucha, however, was a party to both suits. In that respect, Plaintiff's allegations are the same in both suits.

---

[5] *See also Kiman v. New Hampshire Dep't of Corr.*, 451 F.3d 274, 284-285 (1st Cir. 2006); *McGugan v. Adlana-Bernier*, 752 F.3d 224, 231-232 (2d Cir. 2014) (regarding the RA); *Beckett v. Pennsylvania Dep't of Corr.*, 597 F. App'x 665, 667 (3rd Cir. 2015); *Miller v. Hinton*, 288 F. App'x 901, 903 (4th Cir. 2008); *Nottingham v. Richardson*, 499 F. App'x 368, 377 (5th Cir. 2012); *Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir. 1996); *Simmons v. Navajo Cty*, 609 F. 3d 1011, 1022 (9th Cir. 2010); *Nasious v. Colorado*, 495 F. App'x 899, 902 (10th Cir. 2012); *Jones v. Rutherford*, 546 F. App'x 808, 812 (11th Cir. 2013); *Stevens v. Hutchinson*, No. 1:13-cv-918, 2013 Wl 4926813 at *4 (W.D. Mich. Sep. 12, 2013); *Winburn v. Davis*, No. 08-14996, 2009 WL 3002555 at *5 (E.D. Mich. Sep. 16, 2009). Of course, it is not impossible that medical treatment could be denied for an impermissibly discriminatory reason and, therefore, violate the ADA. Plaintiff has not made that allegation.

[6] It is possible that Plaintiff included Dr. Davenport within his *Powell I* catch-all defendant group of "other defendants" whose names were unknown. *Powell I* (Compl., ECF No. 1.)

The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle*, 429 U.S. at 103-04. The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004). If the plaintiff's claim, however, is based on "the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious," *id.* at 898, the plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment," *Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001) (internal quotation marks omitted).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farmer*, 511 U.S. at 834). Deliberate indifference "entails something more than mere negligence," *Farmer*, 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* Under *Farmer*, "the official must both be aware of facts from which the inference could be

drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Id.* at 105-06 (quotations omitted). Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Sanderfer v. Nichols*, 62 F.3d 151, 154-55 (6th Cir. 1995); *Ward v. Smith*, No. 95-6666, 1996 WL 627724, at *1 (6th Cir. Oct. 29, 1996). This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). If "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.*; *see also Rouster v. Saginaw Cnty.*, 749 F.3d 437, 448 (6th Cir. 2014); *Perez v. Oakland Cnty.*, 466 F.3d 416, 434 (6th Cir. 2006); *Kellerman v. Simpson*, 258 F. App'x 720, 727 (6th Cir. 2007); *McFarland v. Austin*, 196 F. App'x 410 (6th Cir. 2006);

*Edmonds v. Horton*, 113 F. App'x 62, 65 (6th Cir. 2004); *Brock v. Crall*, 8 F. App'x 439, 440 (6th Cir. 2001); *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998). "Where the claimant received treatment for his condition, as here, he must show that his treatment was 'so woefully inadequate as to amount to no treatment at all.'" *Mitchell v. Hininger*, 553 F. App'x 602, 605 (6th Cir. 2013) (quoting *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011)).

Plaintiff's claim that ECF or URF personnel were deliberately indifferent to Plaintiff's mental health needs has already been rejected by the Sixth Circuit Court of Appeals:

> Powell's complaint shows that he received visits from mental health counselors while he was in administrative segregation and that he was prescribed medication to treat his mental disorders. The complaint indicates no more than Powell's disagreement with the conclusion of his institution's mental-health staff that his needs could be adequately addressed in administrative segregation, and it therefore fails to state a deliberate-indifference claim. *See Mitchell v. Hininger*, 553 F. App'x 602, 605 (6th Cir. 2014) (stating that "a desire for additional or different treatment does not suffice by itself to support an Eighth Amendment claim").

*Powell v. Washington*, No. 17-1262, slip op. at p. 11 (6th Cir. Dec. 18, 2017).

Plaintiff's post-*Powell I* allegation regarding Dr. Davenport's April 2017 statement does not evidence deliberate indifference. She simply states that Plaintiff will be released from segregation when there is an available bed. Placement in segregation is a routine discomfort that is "'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. 337, 347 (1981); *see also Jones v. Waller*, No. 98-5739, 1999 WL 313893, at *2 (6th Cir. May 4, 1999). Plaintiff's retention in segregation for a few additional weeks pending the availability of a bed at the appropriate security level in general population does not demonstrate Dr. Davenport's disregard of a substantial risk of serious harm to Plaintiff. Accordingly, Plaintiff has failed to state a claim against Defendant Davenport.

### E. Other Eighth Amendment Claims

Although the statements Plaintiff attributes to Dr. Davenport do not suffice to demonstrate her deliberate indifference to Plaintiff's serious mental health needs, the statements and actions of Defendants John Doe #1, Jane Doe #1, Jane Doe #2, Mason, Curtis, and Holden, as alleged in Complaint paragraphs 20-25, are a different matter. Those facts support an inference that the defendants may have been aware of, and disregarded, a serious medical need.

Plaintiff raises another Eighth Amendment claim against Defendants Jane Doe #1, Jane Doe #2, Mason, Curtis, Holden, and John Doe #2. The Eighth Amendment embodies a constitutional limitation on the power of the states to punish those convicted of a crime. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *See Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981); *Trop v. Dulles*, 356 U.S. 86, 101 (1958). The Eighth Amendment also prohibits conditions of confinement which, although not physically barbarous, "involve the unnecessary and wanton infliction of pain." *Rhodes*, 452 U.S. at 346. Among unnecessary and wanton infliction of pain are those that are "totally without penological justification." *Id.*

Plaintiff alleges he was repeatedly hogtied for extended periods of time. Those allegations must be analyzed under the Supreme Court authority limiting the use of force against prisoners. This analysis must be made in the context of the constant admonitions by the Supreme Court regarding the deference that courts must accord to prison or jail officials as they attempt to maintain order and discipline within dangerous institutional settings. *See, e.g.*, *Whitley v. Albers*, 475 U.S. 312, 321-22 (1986).

Generally, restrictions and even harsh conditions of confinement are not necessarily cruel and unusual punishment prohibited by the Eighth Amendment. *Rhodes*, 452 U.S. 347. The

Supreme Court has held that "whenever guards use force to keep order," the standards enunciated in *Whitley*, 475 U.S. 312, should be applied. *Hudson*, 503 U.S. at 7; *see also Wilkins v. Gaddy,* 559 U.S. 34, 37-39 (2010). Under *Whitley*, the core judicial inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 6-7; *Wilkins*, 559 U.S. at 37. In determining whether the use of force is wanton and unnecessary, the court should evaluate the need for application of force, the relationship between that need and the amount of force used, the threat "reasonably perceived by the responsible officials," and any efforts made to temper the severity of the forceful response. *Hudson*, 503 U.S. at 6-7 (citing *Whitley*, 475 U.S. at 321); *accord Griffin v. Hardrick*, 604 F.3d 949, 953-54 (6th Cir. 2010); *McHenry v. Chadwick*, 896 F.2d 184 (6th Cir. 1990).

Physical restraints are constitutionally permissible where there is penological justification for their use. *Rhodes*, 452 U.S. at 346; *Jones v. Toombs*, No. 95-1395, 1996 WL 67750, at *1 (6th Cir. Feb. 15, 1996); *Hayes v. Toombs*, No. 91-890, 1994 WL 28606, at *1 (6th Cir. Feb. 1, 1994); *Rivers v. Pitcher*, No. 95-1167, 1995 WL 603313, at *2 (6th Cir. Oct. 12, 1995). Here, there was certainly a penological, and medical, justification for some form of restraints, but under the circumstances alleged, the Court cannot say that being hogtied for hours was not excessive here. Accordingly, Plaintiff's complaint regarding those restraints at the end of March, 2017, may go forward.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's claims against Defendants Thomas Osier, Unknown Isard, Unknown LaLounde, Unknown Chapman, Unknown Dunton, Thomas Mackie, Timothy Ball, Robert Sharp, Brian Majerczyk, Carol Kenison, Unknown Mucha, Jason Thomas, and Larry

Weaver, will be dismissed as legally frivolous. The Court determines further that Defendant Michigan Department of Corrections will be dismissed on grounds of immunity and for failure to state a claim. The Court will dismiss Defendant Melissa Davenport for failure to state a claim. The Court will also dismiss, for failure to state a claim, Plaintiff's equal protection, due process, ADA, RA, and Eighth Amendment claims against Defendants John Doe #1, John Doe #2, Jane Doe #1, Jane Doe #2, Unknown Mason, Unknown Holden, and Unknown Curtis, EXCEPT: (1) Plaintiff's Eighth Amendment claim for deliberate indifference to serious mental health needs based on the actions of John Doe #1, Jane Doe #1, Jane Doe #2, Unknown Mason, Unknown Curtis, Unknown Holden, and John Doe #2 in response to Plaintiff's suicide attempts as described in ¶¶ 20-25 of the complaint; and (2) Plaintiff's Eighth Amendment claims against Jane Doe #1, Jane Doe #2, Unknown Mason, Unknown Curtis, Unknown Holden, and John Doe #2 for hogtying Plaintiff as described in ¶¶ 21, 24, and 25 of the complaint.

An order consistent with this opinion will be entered.


Dated:   March 5, 2019            /s/ Paul L. Maloney
                                  Paul L. Maloney
                                  United States District Judge