UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

| | |
|---|---|
| MICHAEL LEON POWELL #484234, | Case No. 2:18-cv-221 |
| Plaintiff, | Hon. Paul L. Maloney |
| | U.S. District Judge |
| v. | |
| MICHIGAN DEPARTMENT OF CORRECTIONS, et al., | |
| Defendants. | |
| _____/ | |

**REPORT AND RECOMMENDATION**

## I. Introduction

This is a civil rights action brought by prisoner Michael Leon Powell pursuant to 42 U.S.C. § 1983 for events that occurred while he was housed at the Chippewa Correctional Facility (URF) in Kincheloe, Michigan and the Oaks Correctional Facility (ECF) in Manistee, Michigan.  The Court issued an opinion on March 5, 2019, that partially dismissed some Defendants and claims. (ECF No. 4.)  The remaining Defendants are Thomas Holden, Alline Curtis, Candi Mason, two John Does, and two Jane Does.  Powell remaining claims are Eighth Amendment claims relating to (1) the Defendants' responses to his suicide attempts, and (2) for "hogtieing" Plaintiff.

Powell alleges that he was placed in administrative segregation in 2016.  He says that, in March of 2017, he used a razor to cut his arm because he no longer wanted to live.  (ECF No. 1, PageID.6.)  Defendants responded by treating his wound and placing him back into segregation.  (*Id.*)   On March 27, 2017, Powell says that

he was stripped and hogtied by corrections officers and nurses. (*Id.* at PageID.6-7.) On March 28, 2017, he removed his bandage on his arm and he was then taken to the hospital for sutures. (*Id.* at PageID.7.) Defendants Mason, Curtis, and Holden bandaged his wound, strip searched, and hogtied him. (*Id.*) Powell says he remained hogtied and in pain until March 29, 2017. (*Id.*) By April of 2017, Powell had transferred to ECF. (*Id.*) Powell spent a total of 305 days in segregation. (*Id.* at PageID.8.)

Defendants filed a motion for summary judgment arguing that Powell failed to exhaust his administrative remedies against them by filing a grievance and exhausting each step of the process. (ECF No. 28.) Powell argues that he did not need to exhaust his administrative remedies due to his mental health condition. (ECF Nos. 31 and 35.) He also asserts that he did exhaust his administrative remedies.

The undersigned has reviewed the pleadings and associated documents and respectfully recommends that the Court grant the summary judgment motion and dismiss this case.

**II. Summary Judgment Standard**

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient

disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### III. Exhaustion of Administrative Remedies

A prisoner's failure to exhaust his administrative remedies is an affirmative defense, which Defendants have the burden to plead and prove. *Jones v. Bock*, 549 U.S. 199, 212-16 (2007). "[W]here the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

Pursuant to the applicable portion of the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies. *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001). A prisoner must first exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones*, 549 U.S. at 218-19; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218-19. In rare circumstances, the grievance process will be considered unavailable where officers are unable or consistently unwilling to provide relief, where the exhaustion procedures may provide relief, but no ordinary prisoner can navigate it, or "where prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 578 U.S. ___, 136 S.Ct. 1850, 1859-60 (2016).

Michigan Dept. of Corrections (MDOC) Policy Directive 03.02.130 (eff. date 07/09/07, superseded on 03/18/19), sets forth the applicable grievance procedures for prisoners in MDOC custody at the time relevant to this complaint. Inmates must

first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ P. If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution. *Id.* at ¶¶ P, V. The inmate submits the grievance to a designated grievance coordinator, who assigns it to a respondent. *Id.* at ¶ V. The Policy Directive also provides the following directions for completing grievance forms: "The issues should be stated briefly but concisely. Information provided is to be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ R (emphasis in original).

When prison officials waive enforcement of these procedural rules and instead consider a non-exhausted claim on its merits, a prisoner's failure to comply with those rules will not bar that prisoner's subsequent federal lawsuit. *Reed-Bey v. Pramstaller*, 603 F.3d 322, 325 (6th Cir. 2010). The Sixth Circuit has explained:

> [A] prisoner ordinarily does not comply with MDOCPD 130—and therefore does not exhaust his administrative remedies under the PLRA—when he does not specify the names of each person from whom he seeks relief. *See Reed-Bey v. Pramstaller*, 603 F.3d 322, 324-25 (6th Cir. 2010) ("Requiring inmates to exhaust prison remedies in the manner the State provides—by, say, identifying *all* relevant defendants—not only furthers [the PLRA's] objectives, but it also prevents inmates from undermining these goals by intentionally defaulting their claims at each step of the grievance process, prompting unnecessary and wasteful federal litigation process."). An exception to this rule is that prison officials waive any procedural irregularities in a grievance when they nonetheless address the grievance on the merits. *See id.* at 325. We have also explained that the purpose of the PLRA's exhaustion requirement "is to allow prison officials 'a fair opportunity'

5

>to address grievances on the merits to correct prison errors that can and should be corrected to create an administrative record for those disputes that eventually end up in court." *Id.* at 324.

*Mattox v. Edelman*, 851 F.3d 583, 590-91 (6th Cir. 2017).[1]

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten days after the response was due. MDOC Policy Directive 03.02.130 at ¶¶ T, BB. The respondent at Step II is designated by the policy, *e.g.,* the regional health administrator for medical care grievances. *Id.* at ¶ DD.

If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form. *Id.* at ¶¶ T, FF. The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.* at ¶¶ T, FF. The Grievance and Appeals Section is the respondent for Step III grievances on behalf of the MDOC director. *Id.* at ¶ GG. "The total grievance process from the point of filing a Step I grievance to providing a Step III response shall generally be completed within 120 calendar days unless an extension has been approved." *Id.* at ¶ S.

---

[1] In *Mattox*, the Sixth Circuit held that a prisoner may only exhaust a claim "where he notifies the relevant prison . . . staff" regarding the specific factual claim "giving the prison staff a fair chance to remedy a prisoner's complaints." *Id.* at 596. For example, grieving a doctor about his failure to give cardiac catheterization failed to grieve the claim that the doctor erred by not prescribing Ranexa.

## IV. Analysis.

Defendants argue that Powell never filed a grievance asserting the conduct alleged in his complaint. Powell argues that he did not need to grieve his claims against Defendants because he is mentally ill. Moreover, Powell argues that he grieved his claims multiple times.

Despite Powell's claims that his mental illness prevented him from filing grievances, he admits that he filed many grievances. Powell has not cited any authority to support his argument that his mental health condition excused his obligation to exhaust his administrative remedies. Further, Powell has failed to place verifiable medical evidence in the record that could establish that his mental illness prevented him from filing grievances.

Powell also argues that he did exhaust his claims in **Grievance Identifier ECF 17-05-1712-12F**. Even assuming that this grievance is relevant to Powell's claims in his complaint against the remaining Defendants, this grievance was not exhausted because it was rejected at Step III due to Powell's failure to comply with MDOC grievance procedural rules. (ECF No. 29-3, PageID.142.)

At Step I of this grievance, Powell wrote the following:

> | Name (print first, last) | Number | Institution | Lock Number | Date of Incident | Today's Date |
> |---|---|---|---|---|---|
> | Michael Powell | 484234 | ECF | 3-248 | Ongoing | 5-30-17 |
>
> What attempt did you make to resolve this issue prior to writing this grievance? On what date? _____
> If none, explain why. Attempted to get different medications from the psychiatrist.
>
> State problem clearly. Use separate grievance form for each issue. Additional pages, using plain paper, may be used. Four copies of each page and supporting documents must be submitted with this form. The grievance must be submitted to the Grievance Coordinator in accordance with the time limits of OP 03.02.130.
>
> The medication that I am taking is not helping to cope with my mental illness in segregation. I have attempted suicide 3 times while in segregation and I'm continuing to have suicidal thoughts and anxiety attacks. I keep having visions of chewing through my arm into my vein again. Policy Directive 04.06.182, "Mentally Disabled Prisoners In Segregation," paragraph D states "Prisoners with a mental disability ordinarily should not be housed in segregation if the disability may preclude adequate adjustment in segregation." I have insomnia and have lost 25 pounds in ad. seg. Can I please be provided with better medication.
>
> Michael Powell
> Grievant's Signature

(ECF No. 29-3, PageID.145.)

Powell's grievance was denied at Step I. The disposition of his grievance at Step I is shown below:

> **SUMMARY OF COMPLAINT:**
> Mr. Powell feels he is not receiving adequate mental health treatment.
>
> **INVESTIGATION INFORMATION**
> Investigation reveals that Mr. Powell has been seen regularly by his case manager to monitor his mental status. While in segregation, he was monitored according to policy. He has also been seen for regular medication reviews by the psychiatrist. His is prescribed 3 psychotropic medications and during his last medication review reported no problems with them.
>
> **APPLICABLE POLICY, PROCEDURE, ETC.**
> PD 04.06.180
> PD 04.06.183
> OP 04.06.183
>
> **SUMMARY**
> Mr. Powell feels his mental health needs were not met. There is no evidence that his mental health needs were being ignored. He has been routinely seen for case management contacts and medication reviews. No policy violation found.

(*Id.* at PageID.146.)

Powell then proceeded to Step II and Step III of the process for this grievance. Powell's filings at these steps are shown below.

**STEP II — Reason for Appeal**
I was held in Administrative Segregation from August 13, 2016 until June 12, 2017. On 3-27-17 and 3-28-17 I attempted suicide from being being held in Ad. Seg. long term. "Mentally Disabled Prisoners in Segregation" P.D. 04.06.182 states; Prisoners with a mental disability ordinarily should not be housed in segregation. The department has more appropriate mental health care settings which are designed for the therapeutic management and care of these prisoners..." The negligent quality of mental health care resulted in 3 suicide attempts while in segregation. Mental health care staff and other staff did not follow Policy.

**STEP II — Response**
PLEASE SEE ATTACHED

Respondent's Name (Print): TOM OBIER
Respondent's Signature: [signature]
Date: 7/16/2017

**STEP III — Reason for Appeal** The issue's in my original grievance and step II was not addressed. Mental health staff and prison administrators along with custody staff contributed to my mental health deterioration by not following P.D. 04.06.182. Staff action lead to me attempting suicide while being housed in long term ad. seg. Even after my suicide attempts my mental health needs were still being neglected and ignored.

(*Id.* at PageID.143.)

The Step II response states:

> **CONCLUSION:**
> I have reviewed your Step I Grievance, the Step I Response, and your Step II Reason for Appeal.
>
> Prisoner's Step I grievance was a complaint surrounding the claim that the psychotropic medication was not working. Prisoner stated "Can I please be provided with a better medication?" The Step I Response adequately addressed the prisoner's complaint. At Step II prisoner completely changes his complaint to being housed in segregation. This is a new complaint. This is a violation of MDOC PD 03.02.130 Prisoner/Parolee Grievances. Prisoner is referred to that PD for review to ensure responsible filing in the future.
>
> At any rate, the EMR was reviewed and the prisoner is being seen in accordance with Mental Health Services policy. The mental health medication prescribed to the grievant is done so by the mental health professional practicing within the scope of their education, training and experience and within the policy directives set forth by the MDOC, specifically the current MDOC BHCS formulary. The MHS team is following policy in relation to the appeal process for prisoners. The fact that the grievant disagrees with the professional judgment of the medication provider and that the team does not interpret policy same as the prisoner does not constitute a violation of policy, inappropriate treatment, negligence, or neglect. There has been no violation of policy. Grievance denied.
>
> Grievant is advised to follow policy and procedure and mental health care recommendations as necessary.

> **CONCLUSION:**
> I have reviewed your Step I Grievance, the Step I Response, and your Step II Reason for Appeal.
>
> Prisoner's Step I grievance was a complaint surrounding the claim that the psychotropic medication was not working. Prisoner stated "Can I please be provided with a better medication?" The Step I Response adequately addressed the prisoner's complaint. At Step II prisoner completely changes his complaint to being housed in segregation. This is a new complaint. This is a violation of MDOC PD 03.02.130 Prisoner/Parolee Grievances. Prisoner is referred to that PD for review to ensure responsible filing in the future.
>
> At any rate, the EMR was reviewed and the prisoner is being seen in accordance with Mental Health Services policy. The mental health medication prescribed to the grievant is done so by the mental health professional practicing within the scope of their education, training and experience and within the policy directives set forth by the MDOC, specifically the current MDOC BHCS formulary. The MHS team is following policy in relation to the appeal process for prisoners. The fact that the grievant disagrees with the professional judgment of the medication provider and that the team does not interpret policy same as the prisoner does not constitute a violation of policy, inappropriate treatment, negligence, or neglect. There has been no violation of policy. Grievance denied.
>
> Grievant is advised to follow policy and procedure and mental health care recommendations as necessary.

(*Id.* at PageID.144.)

The response at Step III rejected the grievance because Powell had not included the required information or followed the required procedures. The Step III response is shown below.

**Step III Grievance Response**

Michael Powell                484234

ECF     051712

Grievant is notified in accordance with PD 03.02.130 prisoners are required to file grievance in a responsible manner. A Step I grievances is to be submitted within five business days after the grievant has attempted to resolve the issue, which was to occur within two business days of becoming aware of a grievable issue. Issues should be stated briefly but concisely. Information is to be limited to the facts, i.e.; who, what, when, where, etc. Dates, times, names, and places are to be included in the grievance body. After review, there is no indication the grievant attempted to resolve this issue prior to filing this grievance as outlined in policy. Also, by the grievant stating "ongoing", the grievant is not consistent with the requirements outlined within PD 03.02.130 therefore the grievance is rejected.

The grievance tracking number has been changed from ECF-05-1712-12F to ECF-05-1712-28E in order to reflect the grievance category code at Step III.

Response of Bureau of Health Care Services          Date:    11/2/2017

Approved: R. Harbaugh, RN2                          Date:   11/8/17
              R. Harbaugh, RN

(*Id.* at PageID.142.)

The rejection of Powell's Step III grievance establishes that Powell failed to properly exhaust his claims against any Defendant. The Sixth Circuit in *Reynolds-Bey v. Harris*, 428 F. App'x 493 (6th Cir. 2011) stated:

> *Reed–Bey* states that in habeas cases, " 'a procedural default does not bar consideration of a federal claim ... unless the last state court rendering a judgment in the case clearly and expressly states that its judgment rests on a state procedural bar,' or it is otherwise clear they did not evaluate the claim on the merits." *Id.* (quoting *Harris v. Reed*, 489 U.S. 255, 263, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989)). Here, the Step III response (the equivalent of the last state court in habeas) did not "clearly and expressly" state that Reynolds–Bey's fifth grievance was being rejected on procedural grounds. Rather, it mentioned the procedural bases for the Step I and II decisions and then rested its

11

determination on the substantive ground that "[d]ismissals/not guilty findings in major misconduct hearings are not considered proof of misconduct on the part of the author of the misconduct or on the part of any other staff." (R. 32–4 at 6.) Therefore, we find that Grievance OTF 05–03–00153–28E was exhausted for purposes of the PLRA.

*Id*. at 502.

The MDOC's Step III response to Powell's grievance clearly rejected Powell's grievance because he had not complied with MDOC procedural rules. In the opinion of the undersigned, *Reynolds-Bey v. Harris* makes it clear that where a Step III response rejects a grievance for failing to follow MDOC grievance procedure, the grievance cannot be considered properly exhausted under the policy.

Thus, the undersigned concludes that Powell failed to exhaust his claims against Defendants.

### V. Recommendation

The undersigned respectfully recommends that this Court grant Defendants' motion for summary judgment (ECF No. 28) due to Powell's failure to exhaust his administrative remedies.

Powell has filed a letter request for the full names of his John Doe and Jane Doe Defendants. (ECF No. 12.) If the Court concludes that Plaintiff failed to exhaust his administrative remedies, it recommended that the Court find this request moot.

This recommendation, if adopted, will result in dismissal of the complaint.

### **NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); Fed. R.

Civ. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).


Dated:   November 26, 2019              /s/ *Maarten Vermaat*
                                        MAARTEN VERMAAT
                                        U. S. MAGISTRATE JUDGE